# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  _____

(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 19 2025

JEFFREY P. COLWELL
CLERK
_____

Peyman BABAEI,

Plaintiff

v.

Moses STANCIL
Amanda RETTING
Justin ENSINGER
Xaviera TURNER.

Defendants.

**Jury Trial requested:**
**(Please check one)**
__X__ Yes _____ No

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

## VERIFIED PRISONER COMPLAINT and REQUEST FOR JURY TRIAL

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

**A.    PLAINTIFF INFORMATION**

Peyman Babaei.  194890, Colorado Territorial Correctional Facility, PO Box 1010, Canon City, CO 81215-1010
_____(Name, prisoner identification number, and complete mailing address)_____

_____N/A_____
(Other names by which you have been known)

__X__    **Convicted and sentenced state prisoner**

**B.    DEFENDANT(S) INFORMATION**

Defendant 1:  Moses STANCIL, Executive Director – Colorado Department of Corrections
1250 Park Loop Drive, Colorado Springs, CO 80910
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes __X__ No (*check one*).  Briefly explain:

Executive Director Stancil is the Apex executive officer for the CDOC.  In that capacity, Executive Director Stancil is responsible for the promulgation off all CDOC Administrative Rules and Regulations which affect CDOC inmates' mental health treatment, including but not limited to CDOC AR 700-19 which governs the Sex Offender Treatment Monitoring Program.  It is AR 700-19 that is used by the Defendants to deny Plaintiff's request for therapeutic sex offender treatment.  AR 700-19 was most recently signed into effect by Moses Stancil on May 1, 2024, with Moses Stancil electronic signature.

Defendant 1 is being sued in his __X__ individual and/or __X__ official capacity.

Defendant 2:  Amanda RETTING, Program Administrator – Sex Offender Treatment and Monitoring Program – SOMB Full Operating Adult Provider and Clinical Supervisor.  Colorado Department of Corrections. 1250 Park Loop Drive, Colorado Springs, CO 80910
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes __X__ No (*check one*).  Briefly explain:

Amanda Retting is the Director and Program Administrator for the CDOC's Sex Offender and Treatment and Monitoring Program.  In that capacity, Amanda Retting is responsible for interpreting and enforcing the CDOC Administrative Rules and Regulations which affect CDOC inmates' enrollment, and successful progression in SOTMP Therapeutic Treatment including CDOC AR 700-19, which governs the Sex Offender Treatment Monitoring Program.  In addition, Amanda Retting is responsible for maintaining and adjusting the CDOC's Global Referral List, which is used to determine if and when a CDOC sex offender is enrolled into SOTMP Therapeutic Treatment.

Defendant 2 is being sued in her __X__ individual and/or __X__ official capacity.

2

Defendant 3:     Justin Ensinger.  Sex Offender Treatment and Monitoring Program Coordinator,
and CTCF Mental Health Program Director.  Colorado Territorial Correctional
Facility, 275 US-50, Canon City, CO 81215
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  __**X**__ Yes  __**X**__ No (*check one*).  Briefly explain:

Justin Ensinger is the Program Coordinator for the CTCF's Sex Offender and
Treatment and Monitoring Program.  In that capacity, Justin Ensinger is
responsible for interpreting and enforcing the CDOC Administrative Rules and
Regulations which affect CDOC inmates' enrollment, and successful
progression in SOTMP Therapeutic Treatment including CDOC AR 700-19,
which governs the Sex Offender Treatment Monitoring Program.  In addition,
Justin Ensinger is responsible for maintaining and adjusting the CDOC's Global
Referral List, which is used to determine if and when a CDOC sex offender is
enrolled into SOTMP Therapeutic Treatment

Defendant 3 is being sued in his __**X**__ individual and/or X__ official capacity.

Defendant 4:     Xaviera Turner Sex Offender Treatment and Monitoring Program Coordinator,
Colorado Territorial Correctional Facility, 275 US-50, Canon City, CO 81215
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  __**X**__ Yes  __**X**__ No (*check one*).  Briefly explain:

Xaviera Turner is the Program Coordinator for the CTCF's Sex Offender and
Treatment and Monitoring Program.   In that capacity, Xaviera Turner is
responsible for interpreting and enforcing the CDOC Administrative Rules and
Regulations which affect CDOC inmates' enrollment, and successful
progression in SOTMP Therapeutic Treatment including CDOC AR 700-19,
which governs the Sex Offender Treatment Monitoring Program.  In addition,
Xaviera Turner is responsible for maintaining and adjusting the CDOC's Global
Referral List, which is used to determine if and when a CDOC sex offender is
enrolled into SOTMP Therapeutic Treatment

Defendant 4 is being sued in her __**X**__ individual and/or X__ official capacity.

## C.     JURISDICTION and VENUE

__**X**__ State/Local Official (42 U.S.C. § 1983) and (42 U.S.C. § 1985)

This action arises under the constitution and the laws of the USA, including Article III,
Section 1 of the U.S Constitution and 42 U.S.C. §§ 1983, 1988. This Court has the authority to
grant the declaratory and injunctive relief requested herein pursuant to 28 U.S.C. §§ 2201 –
2202. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343.  Venue is
proper in the United States District Court for District of Colorado pursuant to 28. U.S.C. § 1391

**D.     STATEMENT OF CLAIM(S)**

CLAIM ONE:            42 USC § 1983 - 14th Amendment – Procedural Due Process
                     Claim One is asserted against all Defendants:

CLAIM TWO:            42 USC § 1983 - 14th Amendment – Substantive Due Process
                     Claim Two is asserted against all Defendants:

CLAIM THREE:          42 USC § 1983 - 14th Amendment – Breach of Plea Agreement
                     Claim Three is asserted against all Defendants:

CLAIM FOUR:           42 USC 2000cc- Religious Land Use and institutionalized Person Act
                     Claim Four is asserted against all Defendants:

CLAIM FIVE:           42 USC § 1983 – 8th Amendment / Cruel and Unusual Punishment
                     Claim Five is asserted against all Defendants:

CLAIM SIX:            42 USC § 1985 – Conspiracy to Violate Civil Rights / Equal Protection
                     Claim Six is asserted against all Defendants:

**E.     INTRODUCTION**

  This cause arises from Defendants, continued failure and refusal to provide statutorily mandated therapeutic treatment to Plaintiff under Colorado's Sex Offender Lifetime supervision Act of 1998 (SOLSA), CRS § 18-1.3-1001 et seq. The plain language of the ACT mandates that sex offenders "Shall be required as part of the sentence to undergo treatment."

  Despite the clear statutory mandate that Defendants must provide Plaintiff with SOTMP treatment, the Defendants have arbitrarily and capriciously denied Plaintiff the opportunity to do so thereby leaving Plaintiff untreated and in crisis. This deprivation of treatment results in Plaintiff's *de facto* lifetime prison sentence where he languishes in an untreated state.

  By steadfastly refusing to provide Plaintiff with State mandated therapeutic treatment, Defendants are breaking the law, breaching their promises to Plaintiff, and abandoning Plaintiff's mental health needs.  As such, Plaintiff unnecessarily languishes in prison because Defendants will not provide him the promised and mandated treatment.  As a result, Plaintiff suffers from anxiety, depression, insomnia, migraine headaches, night terrors, hopelessness, helplessness, and

other illnesses attributable to his untreated condition, the arbitrary nature of his confinement, and the uncertainty regarding his future.

This cruel irrational and avoidable circumstance deprives Plaintiff of constitutionally protected interests

Plaintiff comes to this Court for relief.

## *PARTIES.*

**Plaintiff**

1. Plaintiff Peyman Babaei (hereinafter "Plaintiff") is incarcerated in Colorado Department of Correction's Colorado Territorial Correctional Facility (CTCF).

2. Plaintiff is a practicing Christian, and was a congregant of *Trace Church* in Colorado Springs, Colorado from August 2019 to August of 2022.

3. Plaintiff worked at the Christian-based "*Compassion International*" in Colorado Springs from November of 2019 to March of 2021.

4. Plaintiff has been a member of the *Red Rocks Church God Behind Bars* congregation at the CTCF from September 2022, to the present.

5. Plaintiff speaks Farsi fluently. English is Plaintiff's second language.

6. Plaintiff plead guilty to a sex offense under the Sex Offender Lifetime Supervision Act ("SOLSA") CRS §18-1.3-1001 *et seq* in El Paso County Colorado (Case No 2020CR6205), and sentenced to an indeterminate sentence of three years to life under CRS § 18-1.3-1004(1) (a).

7. Given the nature of Plaintiff's sentence and the plain language of SOLSA, sex offender treatment is **mandatory** for Plaintiff.

8. Plaintiff's sentence was rendered under a negotiated agreement with the state prosecutor which, either implicitly or explicitly, guaranteed therapeutic sex offender treatment.

9. Plaintiff entered Colorado Department of Correction (CDOC) custody in September, 2022 at its "*Denver Reception and Diagnostic Center*" (DRDC).

10. Plaintiff was assessed at the DRDC for placement in the CDOC Sex Offender Treatment and Monitoring Program.

11. Plaintiff may suffer one or more mental health illness which are identified in the *American Psychiatric Association (2013) Diagnostic and Statistical Manual of Mental Health Disorders* (5th ed.) *see* https://doi.org/10.1176/appi.books.9780890425596

12. As a result of the assessment at DRDC, the CDOC assessment specialists advised Plaintiff that due to his conviction, sentence, "Static 99 - R Score," and Plaintiff's specific needs, Plaintiff would be an "appropriate candidate for sex offender treatment at the CTCF's SOTMP."

13. At the end of the assessment, the DRDC specialist advised Plaintiff that as soon as the next bus is scheduled, you will be transferred to CTCF, which will be your "permanent facility until you complete SOTMP treatment."

14. According to Defendant Retting, on October 27, 2022, a CDOC clinician coded Plaintiff as "R-Ready," as outlined in AR 700-19, and then placed Plaintiff on the CDOC's Global Referral List ("GRL") for sex offender therapeutic treatment.

15. Plaintiff's "R-Ready" qualifier identified him as ready for offense specific sex offender treatment.

16. Plaintiff appeared before the Colorado Parole Board on August 2, 2024 where he presented his parole plan, and his equities in support of release of release.

17. The August 05, 2024 Parole Board's "action to defer" noted that Plaintiff had a "*Very Low*" "*CARAS* [1]" Risk Assessment, and a "*Low*" score of *5* on its "*SRT*"[2] *criteria.*

18. The Parole Board identified two "*Readiness Related*" factors in its determination to defer Plaintiff's parole request:  (a) "*Offender awaiting program*;" and (b) "*Untreated Criminogenic Needs/Insufficient tx Dosage.*"

19. The Colorado Parole Board then deferred further action on Plaintiff's request for parole until August 2025 due to, *inter alia*, the lack of mental health therapeutic treatment.

20. Plaintiff has repeatedly and formally requested enrolment in the CTCF's Sex Offender Treatment and Monitoring Program ("SOTMP") therapeutic treatment.

21. To date, the Defendants have refused to place Plaintiff in SOTMP therapeutic treatment.

---

[1] Colorado Actuarial Risk Assessment Score
[2] Sex-Offender Recidivism Treatment

22. Plaintiff has repeatedly and formally requested that the Defendants allow private (at his own expense) sex offender treatment through tele-health, in light of their refusal to treat Plaintiff within the CTCF.

23. To date, the Defendants have refused to allow Plaintiff to receive private tele-health therapeutic treatment.

24. Plaintiff filed his step one, two, and three grievances requesting that he be provided therapeutic treatment as required, to no avail.

25. DOC has denied Plaintiff any relief.

26. Plaintiff has exhausted all administrative remedies available.

27. Because DOC will not provide Plaintiff with treatment, he remains untreated, notwithstanding: (a) the General Assembly determination that offenders with Plaintiff's class of conviction require therapeutic treatment; (b) the Sex Offender Management Board's ("SOMB") conclusion that offenders with Plaintiff's class of conviction require therapeutic treatment (and may benefit from such treatment); and (c) the Colorado Parole Board's determination that Plaintiff requires therapeutic treatment, as Plaintiff presently has "Untreated Criminogenic Needs."

**Defendants**

***Defendant Moses Stancil***

28. Moses Stancil is the Executive Director of the CDOC

29. On information and belief, Defendant Stancil has decades of experience enforcing CDOC Administrative Regulations ("AR's"), both with respect to Sex Offenders' responsibilities, and CDOC staff responsibilities related to the incarceration of Sex Offenders.

30. On information and belief, Defendant Stancil holds a Bachelor's Degree and a Master's degree from Regis University in fields related to law enforcement and/ or criminology.

31. Defendant Stancil has specialized certifications, and licensure to manage sex offenders' severe mental health ills.

32. Defendant Stancil has read, and promulgated current CDOC ARs which govern crucial aspects of SOTMP – Mental Health Treatment

33. Defendant Stancil has demonstrable experience in the management of CDOC's Sex Offender population

7

34. Defendant Stancil is bound by the SOMB standards and Guidelines ("Introduction to the Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders") as they pertain to the treatment of Sex Offenders under SOLSA.

35. On information and belief, Defendant Stancil is required, through his position as the apex enforcement officer of CDOC, to understand how the SOMB Standard and Guidelines set the parameters for the mental health treatment of Sex Offenders within CDOC.

36. Defendant Stancil is, *inter alia*, required to supervise Defendants Retting, Ensinger and Turner in order to ensure that the Defendants are individually and collectively abiding by the SOMB Guidelines, and the CDOC Administrative Regulations.

37. As the apex management and enforcement officer of the CDOC's SOTMP – Therapeutic Treatment program, Defendant Stancil has been the named defendant in several recent Federal District Court actions filed in this District which alleged violations of civil rights related to the management of the CDOC's SOTMP. *See e.g. LeRner v. Stancil*, 2023 U.S Dist. Lexis 188347 *see also Wismer v. Stancil*, 2023 U.S Dist. LEXIS 198274.

### *Defendant Amanda Retting*

38. Amanda Retting, serves as the Director of the CDOC's SOTMP Therapeutic Treatment Program.

39. Defendant Retting has specialized certifications, and licensure to treat sex offenders severe mental health ills.

40. Defendant Retting works at the CDOC headquarters in Colorado Springs.

41. Defendant Retting reports directly to Defendant Stancil.

42. Defendant Retting has years of experience enforcing CDOC AR's, both with respect to general offenders' and Sex Offenders' management, as well as CDOC staff conduct.

43. Defendant Retting has licensure in Sex Offender Mental Health Therapy and treatment.

44. Defendant Retting is an expert as it pertains to the SOMB and SOTMP Guidelines, and the CDOC's SOTMP Therapeutic Treatment Program.

45. Defendant Retting is bound by the SOMB Standards and Guidelines as they pertain to the management and treatment of Sex Offenders within the CDOC.

8

46. Defendant Retting is, *inter alia*, required to supervise Defendants Ensinger and Turner, and to ensure Defendants Ensinger and Turner are abiding by the SOMB Guidelines, and the CDOC Administrative Regulations.

47. Defendant Retting's responsibilities include overseeing SOTMP team members' adherence to Sex Offender Guideline and the CDOC Administrative Regulations.

48. Defendant Retting is required, through her position as the second in the chain of command in the management and treatment of sex offenders within CDOC, and as the "Director" of SOTMP to understand how the SOMB Standard and Guidelines set the parameters for the treatment of Sex Offenders within CDOC.

### *Defendant Justin Ensinger:*

49. Defendant Ensinger is a licensed Clinical Social Worker – LCSW-ALD .0001145 LPC. 0013301.

50. Defendant Ensinger has previously identified himself on official CDOC correspondence as "*Justin Ensinger. MSEd, LPC, LAC. Sex Offender Treatment and Monitoring Program Coordinator. Colorado Territorial Correctional Facility. Colorado Department of Corrections.*"

51. Defendant Ensinger has specialized certifications, and licensure to treat sex offenders' severe mental health ills.

52. Defendant Ensinger holds himself out as an expert in the field of mental health therapeutic treatment for incarcerated prisoners.

53. Defendant Ensinger holds himself out as an expert in the field of mental health therapeutic treatment for incarcerated prisoners convicted of sex offenses.

54. Defendant Ensinger hold himself out as an expert in the field of identifying and censoring sexually explicit reading materials which may harm CTCF's Sex Offender community as evidence by his critical role on the CTCF' "Reading/Censorship Committee."

55. Defendant Ensinger holds himself out as the co-apex decision maker in CTCF with respect to whether a sex offender will be enrolled in SOTMP treatment.

56. Defendant Ensinger is contracted by the CDOC as a SOTMP – Mental Health Therapist, to oversee all of the mental health therapist at the CTCF, and to ensure lawful enforcement of the SOMB Standards and Guidelines.

9

57. Defendant Ensinger is tasked with managing the day-to-day operations of the SOTMP –
Mental Health treatment at CTCF, (including but not limited to enrolling inmates into
SOTMP).

58. Defendant Ensinger oversees all aspects of the SOTMP – mental health treatment program at
the CTCF.

59. Defendant Ensinger reports directly to Defendant Stancil, and to Defendant Retting regarding
the enforcement of CDOC Administrative Regulations.

60. Defendant Ensinger reports directly to Defendant Retting regarding Sex Offender treatment
within CTCF.

61. Defendant Ensinger is required, through his position as the head of SOTMP treatment at the
CTCF, to understand how the SOMB Standard and Guidelines set the parameters for the
treatment of Sex Offenders within CDOC.

62. Defendant Ensinger is often the first responder in the CTCF's grievance procedures when
issues related to SOTMP – Mental Health Treatment arise.

63. Defendant Ensinger has come to the independent conclusion that Sex Offender in CTCF have
a "*liberty interest*" in access to SOTMP – Mental Health treatment. *"[T]o Satisfy your remedy
['expedite placement into SOTMP'] would require **violating the liberty interest of others who
are ahead of you** on the [global referral] list.*"[3]

64. Defendant Ensinger has come to the independent conclusion that Sex Offenders in CTCF have
certain rights with respect to enrollment in CTCF's SOTMP therapeutic treatment: "… *your
grievance is denied on procedural ground. Furthermore, your remedy would require
violating **the right of every person ahead of you on the global referral list (GRL) for
SOTMP treatment**." See* Ensinger Response to Plaintiff's Step One Grievance, *infra.*

65. Defendant Ensinger is superior to Defendant Turner and all of the SOTMP – Mental Health
treatment providers at CTCF, as well as all contractors who work with CTCF's SOTMP
therapeutic treatment team.

---

1.       Defendant Ensinger's acknowledgement of a right to SOTMP treatment is longstanding.  *See* Grievance
Response *in re A.S … C-CT23/24-00237228-1* August 29, 2023 "[T]o Satisfy your remedy ['expedite placement into
SOTMP'] would require *violating the liberty interest of others* who are ahead of you on the [global referral] list."
(emphasis added).

66. On information and belief, Defendant Ensinger is subordinate to Defendant Retting and Defendant Stancil, yet he believes himself and Defendant Turner to be the final authority on whether an inmate will receive SOTMP treatment in CTCF.[4]

### *Defendant Xaviera Turner*

67. Defendant Turner is a SOTMP – Mental Health therapist at the CTCF.

68. Defendant Turner has previously identified herself on official CDOC correspondence as *"Turner, LCSW, LAC DVCS. Behavior Health Staff."*

69. Defendant Turner is a licensed Clinical Social Worker – LCSW, LAC DVCS. Behavioral Health ACD. 0002304- CSW. 09927942

70. Defendant Turner has specialized certifications, and licensure to treat sex offenders' severe mental health ills.

71. Defendant Turner holds herself out as an expert in the field of Sex Offender treatment and management.

72. Defendant Turner holds herself out as the co-apex decision maker in CTCF with respect to whether a sex offender will be enrolled in SOTMP treatment.

73. Defendant Turner reports to Defendant Ensinger, Defendant Retting, and to Defendant Stancil.

74. Defendant Turner oversees all aspects of the SOTMP – Mental Health treatment program at the CTCF.

75. Defendant Turner is tasked with ensuring lawful enforcement of the SOMB Standards and Guidelines.

76. Defendant Turner is required through her position as a leader in the CTCF's SOTMP therapeutic treatment team at CTCF to understand how the SOMB Standard and guidelines set the parameters for the treatment of Sex Offenders within CDOC.

77. Defendant Turner is tasked with managing the day-to-day operations of the SOTMP, (including but not limited to enrolling inmates into the SOTMP).

---

[4]    Based upon an unsubstantiated rumor in CTCF regarding Ensinger's statements against his own interest made in April of 2025. These rumors would be investigated in the event that this case proceeds to discovery.

### *Efforts to Receive SOTMP Therapeutic Treatment*

78. While waiting patiently for the Defendants and the State to make good on their promise to provide state mandated sex offender therapeutic treatment, Plaintiff sought reconsideration of his sentence pursuant to CRCP Rule 35(b).

79. Although El Paso County District Court Judge David A. Gilbert did not grant relief, the Judge did recognize the State's promise for sex offender treatment, and the DOC's responsibility to provide such treatment:

> "Defendant [Babaei] has shown an unusual level of insight and empathy in his letter to the Court. The Court carefully considered Defendant's candor and willingness to accept responsibility for this action along with the serious nature of his crimes against children. The Court hopes that Defendant's willingness to accept responsibility will result in him quickly progressing in treatment and become eligible for parole in the near future."

> *See* Court Order in *People v. Babaei*, January 30th, 2023. Case number 2020CR6205. Div. 7. David A Gilbert District Court Judge

80. Shortly thereafter, Plaintiff followed up with the CDOC seeking enrollment in SOTMP therapeutic treatment.

81. On February 15, 2023, Plaintiff wrote a kite to Defendants Ensinger, Defendant Turner, and a CTCF therapist which stated:

> "I would really appreciate if you allocate me a spot for SOTMP treatment to allow me to work on self-improvement and the help I need to be better in my thinking, mental health and thought process and cognitive abilities. Thank you for your time and I am hoping to hear from you soon. I have been assigned R (Ready) in my profile. I talked to Mr. Johnson for cognitive classes. He mentioned they are not being offered at the moment but when it is offered he will inform me to take part."

82. On February 22, 2023 Defendant Turner responded to Plaintiff's February 15, 2023 Kite via CDOC memorandum:

> "I received your kite from 02/15/2023. Due to the nature of Global Referral List (it changes as people are admitted to and released from CDOC), it is not possible to give you an exact number of where you stand on the list. Your PED is listed as 05/01/2025. You are on the Global Referral List (GRL) for SOTMP *you will be notified when group assignments are available*. (emphasis added)

83. On March 29, 2023, Defendant Ensinger sent Plaintiff a CDOC Memorandum titled "*SOTMP Pretreatment Meeting*" which stated:

> You have been selected to attend the pretreatment meeting that will be held in the central building Sex offender Treatment and Monitoring Program (SOTMP) group room on April 03 2023. The meeting is designed for ***offenders who will be beginning treatment soon*** and would like to know more about SOTMP program before entering treatment in the near future. ***This is an indication that you are at the top of the global referral list (GRL) and will be entering treatment soon."*** (emphasis added).

84. On April 03, 2023 Plaintiff attended a "pre-treatment meeting" with members of the CTCF's SOTMP therapeutic treatment team. At that meeting, Defendant Ensinger provided Plaintiff with a "SOTMP FAQ HANDOUT" which stated:

> "Where am I on the GRL? Where an offender is on the list changes from day to day and we no longer give out this number as it doesn't provide any useful information about when a client will get into treatment. How long will it take for me to get through treatment? The best answer for this question is "***as long as it takes for you to be safe in the community***" (emphasis added).

85. On March 17, 2024, Plaintiff sent a kite to Defendants Turner and Ensinger requesting follow up on therapeutic treatment:

> "Hello, On March 29th, 2023 I received a memorandum from you regarding pre-treatment meeting stating I am at the top of the global referral list (GRL) and will be entering treatment soon. I am just following up to see when I will enter treatment since my PED is approaching."

86. On March 20, 2024 Defendant Turner sent Plaintiff a CDOC Memorandum titled "RE: Behavioral Health" which stated:

> "Mr. Peyman. Thank you for reaching out. Your kite from March 17th, 2024 has been received. I am unclear on the dynamics of the memorandum you received on March 29th 2023. However, I have no further updates on the time frame you would enter treatment. You will be notified about your enrollment when it is your time to enter treatment services"

87. On May 1, 2024, Plaintiff wrote a kite to Defendant Ensinger, with a request to forward a copy to Defendants Retting and Turner, asking for a clarification of his March 29, 2023, Memorandum titled "*SOTMP Pretreatment Meeting.*" Specifically requesting status on his movement on the GRL. Defendant Ensinger failed to respond to the May 1, 2024 kite.

88. On May 14, 2024 Case Manager Greene sent Plaintiff a CDOC Memorandum which stated:

> I will reiterate once again that you are not eligible for release, you do not meet the criteria to release. Thus you do not need to spend a lot of time with all the extra documentation until you are eligible.

89. On June 5, 2024, Plaintiff wrote a kite to Defendant Ensinger (with a request to forward a copy to Defendants Retting and Turner), asking for clarification of AR 700-19 IV (H) (5) (c) ("Offenders for whom English in (sic) their non-primary language") Specifically requesting how such change in the AR could affect Plaintiff's place on the GRL. Defendant Ensinger failed to respond to the June 5, 2024 kite.

90. On June 6, 2024, Plaintiff sent a Kite to Defendant Turner and Defendant Ensinger requesting the status of his placement in SOTMP therapeutic treatment:

> "Hello, my parole hearing is approaching as well as my PED. I was wondering about my placement in treatment since my parole is near. May I get an update?"

91. On June 26, 2024, K. Sloan sent Plaintiff a memorandum on behalf of the CTCF SOTMP therapeutic treatment team titled "Treatment status," which stated:

> "Your sexual violence code is S5R and you are on the global referral list. ***When your name reaches the top of the list***, the SOTMP will contact you. Please be aware that the global referral list is long and will require patience. In the meantime avoid getting any COPDs and invest in other forms of self-help." (emphasis added).[5]

---

[5] *But see* Defendant Ensinger's March 29, 2023, correspondence which stated: ***This is an indication that you*** [Plaintiff] ***are at the top of the global referral list (GRL) and will be entering treatment soon.***"

92. On July 4, 2024, Plaintiff wrote a kite to Defendant Ensinger (with a request to forward a copy to Defendants Retting and Turner), requesting a copy of the SOTMP's *"Distorted Core Belief"* handout which is provided to SOTMP enrollees, and which identifies "Religiosity" and the Christian faith as a *"Criminal Thinking Error"*  Plaintiff stated:

> I learned that religiosity is defined as a "criminal thinking error" and a "distorted core belief" in a SOTMP handout!  This is disconcerting, as I am a devout Christian.  Please provide me with a copy of this SOTMP handout so that I can see that for myself.  I am wondering if the delay in getting treatment? Can you confirm or deny the SOTMP document's treatment of Christianity, and if my religion is keeping me from getting treatment.  Thank you"

93. As of the date of this Complaint, Defendant Ensinger has failed to respond to the July 4, 2024 kite.

94. On July 5, 2024, Plaintiff sent a kite to Defendant Turner and Defendant Ensinger which stated:

> According to the new AR 700-19 section E subsection 7, I would like to request Psycho-educational material for preparation in SOTMP (Pre Treatment materials)

95. On August 13, 2024, Plaintiff received a Kite Response from CTCF Behavioral Health staff which confirmed that CTCF Behavior Health Department is unable to address SOTMP issues or treatment, or to provide SOTMP treatment materials to interested sex offenders:

> "We received your kite requesting treatment materials.  The treatment materials listed are not provided by SOTMP and are used as guide for you to access on your own.  You can access these materials in the library"

96. On August 27, 2024 Defendant Turner sent a memorandum to Plaintiff titled "Letter" in response to Plaintiff request to obtain a private SOTMP therapist (at his own expense) in order to expedite treatment:

> "Mr. Peyman.  I have received your letter. Thank you for reaching out.  Due to your request, I will be referring you back to AR 700-21. You will need to follow the steps that are outlined in that AR.  Thank you."

97. On December 10, 2024, Plaintiff wrote a letter to Defendant Retting, which was copied to Defendants Stancil, Ensinger, and Turner:

> This letter is a formal request for enrollment in the C.T.C.F's SOTMP therapeutic program. I am seeking enrollment so that I may participate. And benefit from particularized sex offender mental health treatment, which is mandated by SOLSA, and administrated under the auspices of SOMB.

> "I am two months past my parole eligibility date. As such, I am eligible for SOTMP therapeutic treatment. It is noteworthy that on March 29, 2023 Justin Ensinger advised me in writing that I was then "on the top of the Global Referral List" for SOTMP mental health treatment. Furthermore on April 3 2023 Justin Ensinger re-confirmed that I was in the "Top twenty for treatment in this facility (CTCF)"

> Given the availability of SOTMP therapeutic treatment at the CTCF, coupled with my readiness to undergo such treatment, I am at a loss to understand the delay. Assuming that staff shortage are to blame, I have reached out to private SOLSA treatment providers who have expressed interest in both private and group tele-health therapy treatment, which would be privately paid, but conducted pursuant to SOLSA and the SOMB "Standards and Guidelines for the Assessment, Evaluation, Treatment, and Behavioral Monitoring of Adult Sex Offenders." See e.g., SOMB Guidelines at Appendix U. See Also CDOC AR 700-21 et seq.

> "Please be advised that I have been working with Misty Zade to obtain authorization for private SOTMP tele-Health Therapy. In fact I have submitted as required by CDOC AR 700-21 FORM A and B for consideration and approval. However, Contrary to the CDOC AR (700-21). I have not received a decision. Rather, Ms. Zade has informed me that I must also submit AR form 700-21 C and D, notwithstanding the fact that AR 700-21 specifically instructs otherwise."

> In light of my willingness and readiness to participate in SOTMP therapeutic treatment, AND the availability of tele-health therapy as set forth by the SOMB in its published guidelines, I hope that both of you will work with Justin Ensinger, Xaviera Turner, and Misty Zade to either enroll me in SOTMP treatment at the CTCF, or alternatively, approve tele-health therapy Sex Offender treatment through qualified psychiatrist or psychologist.

98. On January 02 2025, Defendant Retting responded to Plaintiff's December 10, 2024 letter as follows:

> "My record reflects that you were assessed for amenability to participate in SOTMP **on 10/27/2022**. In that assessment our clinician coded you an R meaning that you have indicated your willingness to participate in SOTMP. **You were placed on the Global referral list (GRL) at that time.** Those with a lifetime sentence structure will be prioritized for treatment and organized by PED.  You are currently placed on the GRL and will be offered the opportunity to participate in treatment once your name has progressed **to the top of the list**."  (emphasis added).[6]

99. On January 5, 2025, Plaintiff wrote a kite to Defendant Turner asking how the SOTMP's "*Distorted Core Belief*" handout could affect Plaintiff's successful progression in SOTMP Treatment, due to Plaintiff's Christian faith.  Plaintiff stated:

> "Could the SOTMP handout, and its determination that Religiosity can be a distorted core belief hinder my enrollment in SOTMP treatment, given that I an [sic] a devout Christian?  And I believe in the forgiveness of sin though Christ? Thank you."

100.  As of the date of this Complaint, Defendant Turner has failed to respond to the January 5, 2024 kite.

101.  On April 16, 2025, Plaintiff wrote a kite to Defendant Turner asking for the a written policy which relates to SOTMP eligibility  Plaintiff stated, in its entirety, :

> "Hello, I would like to request the eligibility criteria for CTCF SOTMP therapeutic treatment. Is there a written policy I can access or request a copy of it?  Do I meet any of the criteria for CTCF SOTMP therapeutic treatment?"

102.  On April 21, 2025, Defendant Turner replied to Plaintiff's April 16, 2025 Kite,  which improperly deflected Plaintiff's request:

> "This memo is to address your kite from 04/16/2025.  Thank you for reaching out but I have no information related to the "SOTMP TC". Not entirely sure what this means."

---

[6] *But see* Defendant Ensinger's March 29, 2023, correspondence which stated:  ***This is an indication that you** [Plaintiff] **are at the top of the global referral list (GRL) and will be entering treatment soon.***

### *Distorted Core Belief – Christianity*

103.    On or about July 4, 2024, Plaintiff became aware of an SOTMP handout titled *"Distorted Core Beliefs,"* which identifies religiosity as a *"Criminal Thinking Error."*

104.    On or about October 22, 2024, Plaintiff read a copy of the *"Distorted Core Beliefs"* document, and noted that on page 19 it contains a caption entitled, *"Criminal Thinking Error #8 Religiosity,"* which includes, *inter alia*, the following: "Example of this error: the Lord will forgive me for my sins…;" "No man can judge me; I'll stand in front of the Lord for Judgment;" "You are making this error when you use religion to support your criminal way thinking, your religious ideas are usually literal and concrete;" Religion, like sentimentality does not consistently deter your criminal thinking or action but does support our self-image [sic] as a good and decent person;" This corrective is for you to realize that your religious beliefs support a false positive sense of self-esteem;"

105.    The *"Distorted Core Beliefs"* document on page 31 contains a caption entitled, *"Thinking Errors Characteristic of the Criminal,"* which includes a subheading *"#8 Religiosity,"* and expresses the following: "The criminal uses religion to support his way of thinking and his criminality;" "His religious ideas are usually very rigid and concrete;" "Religion, like sentimentality does not consistently deter your criminal thinking or action but does support our self-image as a good and decent person."

106.    Upon considering this so-called *"Criminal Thinking Error"* (Religiosity), Plaintiff understood that his only path to receive SOTMP therapeutic treatment was to disavow his long-standing belief in Christianity.

107.    Plaintiff further understood that Defendant Ensinger's and Defendant Turner's manifest hostility towards Christians was endemic to the SOTMP program.

108.    Plaintiff further understood that as long as Defendant Ensinger and Defendant Turner considered Plaintiff a faithful Christian, Plaintiff would remain indefinitely without therapeutic mental health treatment.

109.    Plaintiff understood that the Defendants have placed a chilling effect on his free exercise of religion and that the Defendants grant unequal access and preference to agnostic participants by virtue of the participants' lack of "religiosity."

***Exhaustion of Administrative Remedies***[7]

110.     Plaintiff availed himself to the CDOC grievance process, knowing that other inmates with the same grievances had been met with adverse decisions, and a policy of categorical denial.

111.     On January 18, 2025, Plaintiff filed ***Step 1,*** which memorialized, *inter alia*: (a) Plaintiff's futile efforts to obtain enrollment into CTCF's SOTMP therapeutic treatment program; (b) Defendant Ensinger's prior claim that Plaintiff was in the "Top Twenty" of the GRL; and (c) asserting violations of the 8th and 14th Amendments of the US Constitution.

112.     As a "remedy" Plaintiff requested "place[ment] in SOTMP without any further delay/excuse"

113.     On February 12, 2025 Defendant Ensinger responded to the *Step 1* grievance:

> "Per AR 850-04, the subject of your grievance is not an issue which the grievance process was designed to address. The language in the AR states: "This grievance procedure may not be used to seek review of COPD convictions, administrative segregation placement, and decision of the reading Committee, classification, sex offender designation, parole board decisions, or sentence computation." Because the grievance process is not a valid method for review of your issue, your grievance is denied on procedural ground. Furthermore, your remedy would require violating ***the right of every person ahead of you on the global referral list***[8] (GRL) for SOTMP treatment. Your location on the GRL is based on your parole eligibility date which is currently 10/1/2024. If you were advised that you were in the top 20 on the GRL it would have been an unfortunate communication error."[9]

---

[7] "[A] narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile *King v Ciolli* No 1:23-cv-00519 CNS 2023 WL 2933405 at *3 D Colo Apr 13 2023 *opinion clarified* No 1:21 cv 00519 CNS 2023 WL 3963614 D Colo May 10 2023 *vacated and remanded* no 23-1201,2024 WL 1179908 10th Cir Mar 19 2024. The futility exception generally applies when administrative relied is effectively foreclosed. This may occur in two situation (1) for another inmate's same grievance, there has been an adverse decision disposing of the precise issue raised by the petitioner or (2) other inmates same grievances have been met with policy of categorical denial *Id.* (Quotations and citations omitted).

[8] *But see* Defendant Ensinger's March 29, 2023, correspondence which stated: ***This is an indication that you*** [Plaintiff] ***are at the top of the global referral list (GRL) and will be entering treatment soon."***

8. Defendant Ensinger's acknowledgement of a right to SOTMP treatment is of longstanding. *See* Grievance Response *in re A.S* ... C-CT23/24-00237228-1 August 29, 2023 "[T]o Satisfy your remedy ['expedite placement into SOTMP'] would require ***violating the liberty interest of others*** who are ahead of you on the [global referral] list." (emphasis added).

114.    On February 17, 2025, Plaintiff filed ***Step 2***, which memorialized, *inter alia*: (a) Plaintiff's futile efforts to obtain enrollment into CTCF's SOTMP therapeutic treatment program; (b) Defendant Ensinger's prior claim that Plaintiff was in the "Top Twenty" of the GRL; (c) CDOC Report No. IJ PR301-44 (processed on 02/09/2025) which confirmed 12 vacancies for SOTMP treatment at the CTCF; (d) refusal to enroll was based upon Plaintiff's Christian beliefs due to the Christian Religion being a purported "criminal thinking error;" and (e) asserting violations of the 8th and 14th Amendments of the US Constitution.

115.    As a "remedy" Plaintiff requested "Immediately place me in SOTMP treatment at CTCF. Clearly this would not be a problem given the POSTED 12 VACANCIES at CTCF." (Emphasis in the original.)

116.    On March 14, 2025 Defendant Retting responded to the *Step 2* Grievance:

> "As mentioned in your grievance, your received a letter on 01/02/2025 regarding your placement on the list and that you would be enrolled ***once you have progressed to the top of the list***. It is important to note that the SOTMP offers treatment at multiple facilities that address the different needs of individuals. ***At this time, you would not be an appropriate candidate for the program at CTCF***. Additionally, please understand that these policies and practices are in place to create the most effective and fair opportunity for all individuals required to participate in SOTMP" (emphasis added).[10]

117.    On March 18, 2025, Plaintiff filed ***Step 3***, which memorialized, *inter alia*: (a) Plaintiff's futile efforts to obtain enrollment into CTCF's SOTMP therapeutic treatment program; and (b) averments that failure to provide mental health care treatment was "arbitrary, capricious, and done with callous disregard to my mental health treatment needs" and a denial of a liberty interest in treatment . . . [which] renders upon me cruel and unusual punishment."

---

[10] *But see* Defendant Ensinger's March 29, 2023, correspondence which stated: ***This is an indication that you*** [Plaintiff] ***are at the top of the global referral list (GRL) and will be entering treatment soon.***" *See also* Defendant Ensinger's Step-1 denial which was silent on the appropriateness of Plaintiff's candidacy for the program at CTCF.

118.    Notably, Plaintiff attached three exhibits to the *Step 3* grievance: (a) CDOC report No.
IJPR301-44 evincing a 12-person treatment vacancy at CTCF; (b) *Gambrell v. Stancil et al*.
Case No. 1:24-cv-01853; and (c) March 29, 2023 memorandum from Defendant Ensinger to
Plaintiff stating -  "this is an indication that *you are at the top of the global referral list*
(GRL) and will be entering treatment soon."

119.    On March 31, 2025 Marshall Griffith (CDOC Headquarters - 14298) responded on behalf
of all Defendants by stating:

> "In this time of limited resources there are limited number of treatment
> slots available. There is not method to determine the exact time line for
> treatment; however, if you have indeterminate life sentence and designated
> "R" for treatment, there is a priority list. Based upon the foregoing, I cannot
> recommend any relief in this matter. Your request for relief is denied. This
> is the final administrative response in this matter and *you have exhausted
> your administrative remedies*." (emphasis added).

## DEFENDANTS' PERSONAL PARTICIPATION.

### *Moses Stancil*

120.    Defendant Stancil crafted, signed, promulgated, and enforces the CDOC's Administrative
Regulations and Policies with respect to SOTMP risk classifications

121.    Defendant Stancil crafted, signed, promulgated, and enforces the CDOC's Administrative
Regulations and Policies with respect to the SOTMP Track System, which assigns the type of
treatment Sex Offenders will receive.

122.    Defendant Stancil crafted, signed, promulgated, and enforces the CDOC's Administrative
Regulations and Policies with respect to the Global Referral List.[11]

123.    Defendant Stancil is required to "prioritize" the GRL as required by AR 700-19 § (IV)
(F) (1) or in a manner consistent with its statutory obligations under SOLSA and CRS §§ 16-
11.7-102,104 and 105.

---

[11] This list is purportedly organized in order of priority based on the factors in AR 700-19 which states:
Offenders with a judicial adjudication of a sex crime that are within four years of their parole eligibility
date are prioritized for sex offense specific treatment based upon but not limited to the following: Parole
Eligibility date; Risk for sexual recidivism; Prior SOTMP treatment opportunities; Institutional behavior;
and Ancillary treatment needs e.g. mental Health, substance use disorder treatment.

124.    Defendant Stancil is required to adequately fund, staff, prioritize, and provide required sex offender treatment to eligible individuals.

125.    Defendant Stancil is required to ensure that the CDOC Sex Offender Therapeutic Treatment Team utilizes evidence based practices guided by the American Psychological Association,[12] the nation's largest professional organization for psychology—on its official policy.

126.    Defendant Stancil is required to abide by CDOC Administrative Regulations, and established law which requires that he not unnecessarily place inmates in danger within the prison general population.

127.    Defendant Stancil is required to enforce the CDOC's policy to provide specialized sex offense specific treatment to identified offenders to reduce recidivism and enhance public safety by providing continuum of identification treatment and monitoring services through incarceration

128.    Defendant Stancil is required to enforce the CDOC's policy which allows offenders, presumably to include sex offenders, access to private health care provider when it is in the best interest of the DOC and the offender.

129.    Defendant Stancil knew, and reviewed Plaintiff's December 10, 2024 request for SOTMP treatment.

130.    Defendant Stancil knew, and participated in the DENIAL of Plaintiff's December 10, 2024 request for SOTMP treatment.

131.    Defendant Stancil is aware that the failure to enroll Plaintiff in mandated SOTMP therapeutic treatment violates Plaintiff's liberty interest in Treatment.

132.    Defendant Stancil is aware that failure to treat Plaintiff's severe medical ills constitutes Cruel & Unusual Punishment.

133.    Defendant Stancil is aware that failure to treat Plaintiff's severe medical ills may place Plaintiff in unnecessary danger within the prison environment.

---

[12] The APA states that the purpose of [Evidence based practice] is to promote effective psychological assessment, case formulation, therapeutic relationship and intervention American Psychological Association, Evidence-Based Practice in Psychology

22

*Amanda Retting*

134.    Defendant Retting enforces the CDOC's Administrative Regulations and Policies with respect to SOTMP risk classifications

135.    Defendant Retting enforces the CDOC's Administrative Regulations and Policies with respect to the SOTMP Track System, which assigns the type of treatment Sex Offenders will receive.

136.    Defendant Retting enforces the CDOC's Administrative Regulations and Policies with respect to the Global Referral List.

137.    Defendant Retting is required to "prioritize" the GRL as required by AR 700-19 § (IV) (F) (1) or in a manner consistent with its statutory obligations under SOLSA and CRS §§ 16-11.7-102,104 and 105.

138.    Defendant Retting is required to staff, prioritize, and provide required sex offender treatment to eligible individuals.

139.    Defendant Retting is required to ensure that the CDOC Sex Offender Therapeutic Treatment Team utilizes evidence based practices guided by the American Psychological Association, the nation's largest professional organization for psychology—on its official policy.

140.    Defendant Retting is required to abide by CDOC Administrative Regulations, and established law which requires that he not unnecessarily place inmates in danger within the prison general population.

141.    Defendant Retting is required to enforce the CDOC's policy to provide specialized sex offense specific treatment to identified offenders to reduce recidivism and enhance public safety by providing continuum of identification treatment and monitoring services through incarceration

142.    Defendant Retting is required to enforce the CDOC's policy which allows offenders, presumably to include sex offenders, access to private health care provider when it is in the best interest of the CDOC and the offender.

143.    Defendant Retting knew, and reviewed Plaintiff's December 10, 2024 request for SOTMP treatment.

144.    Defendant Retting knew, and participated in the DENIAL of Plaintiff's December 10, 2024 request for SOTMP treatment.

145.    On March 14, 2025 Defendant Retting DENIED Plaintiff Step-2 Grievance denial where Plaintiff requested: "Immediately place me in SOTMP treatment at CTCF.  Clearly this would not be a problem given the POSTED 12 VACANCIES at CTCF."

146.    Defendant Retting is aware that the failure to enroll Plaintiff in mandated SOTMP therapeutic treatment violates Plaintiff's liberty interest in Treatment.

147.    Defendant Retting is aware that failure to treat Plaintiff's severe medical ills constitutes Cruel & Unusual Punishment.

148.    Defendant Retting is aware that failure to treat Plaintiff's severe medical ills may place Plaintiff in unnecessary danger within the prison environment.

### *Justin Ensinger*

149.    Defendant Ensinger enforces the CDOC's Administrative Regulations and Policies with respect to SOTMP risk classifications

150.    Defendant Ensinger enforces the CDOC's Administrative Regulations and Policies with respect to the SOTMP Track System, which assigns the type of treatment Sex Offenders will receive.

151.    Defendant Ensinger enforces the CDOC's Administrative Regulations and Policies with respect to the Global Referral List.

152.    Defendant Ensinger is required to "prioritize" the GRL as required by AR 700-19 §(IV)(F)(1) or in a manner consistent with its statutory obligations under SOLSA and CRS §§ 16-11.7-102,104 and 105.

153.    Defendant Ensinger is required to staff, prioritize, and provide required sex offender treatment to eligible individuals.

154.    Defendant Ensinger is required to ensure that the CDOC Sex Offender Therapeutic Treatment Team utilizes evidence based practices guided by the American Psychological Association, the nation's largest professional organization for psychology—on its official policy.

155.    Defendant Ensinger is required to enforce the CDOC's policy to provide specialized sex offense specific treatment to identified offenders to reduce recidivism and enhance public safety by providing continuum of identification treatment and monitoring services through incarceration

156.    Defendant Ensinger is required to abide by the CDOC Code of Conduct, and Administrative Regulations 1450-01 and 1450-05, which govern commutations between staff and inmates.

157.    Defendant Ensinger is required to abide by CDOC Administrative Regulations, and established law which requires that he not unnecessarily place inmates in danger within the prison general population.

158.    Defendant Ensinger knew, and reviewed Plaintiff's December 10, 2024 request for SOTMP treatment.

159.    Defendant Ensinger knew, and participated in the DENIAL of Plaintiff's December 10, 2024 request for SOTMP treatment.

160.    On February 12, 2025, Defendant Ensinger denied Plaintiff's Step-1 Grievance, which memorialized, *inter alia*: (a) Plaintiff's futile efforts to obtain enrollment into CTCF's SOTMP therapeutic treatment program; (b) Defendant Ensinger's prior claim that Plaintiff was in the "Top Twenty" of the GRL; (c) asserting violations of the 8th and 14th Amendments of the US Constitution, and requested the remedy of "place[ment] in SOTMP without any further delay/excuse"

161.    Defendant Ensinger is aware that the failure to enroll Plaintiff in mandated SOTMP therapeutic treatment violates Plaintiff's liberty interest in Treatment.

162.    Defendant Ensinger is aware that failure to treat Plaintiff's severe medical ills constitutes Cruel & Unusual Punishment.

163.    Defendant Ensinger is aware that failure to treat Plaintiff's severe medical ills may place Plaintiff in unnecessary danger within the prison environment.

### *Xaviera Turner*

164.    Defendant Turner enforces the CDOC's Administrative Regulations and Policies with respect to SOTMP risk classifications

165.    Defendant Turner enforces the CDOC's Administrative Regulations and Policies with respect to the SOTMP Track System, which assigns the type of treatment Sex Offenders will receive.

166.    Defendant Turner enforces the CDOC's Administrative Regulations and Policies with respect to the Global Referral List.

167.    Defendant Turner is required to "prioritize" the GRL as required by AR 700-19 §(IV)(F)(1) or in a manner consistent with its statutory obligations under SOLSA and CRS §§ 16-11.7-102,104 and 105.

168.    Defendant Turner is required to staff, prioritize, and provide required sex offender treatment to eligible individuals.

169.    Defendant Turner is required to ensure that the CDOC Sex Offender Therapeutic Treatment Team utilizes evidence based practices guided by the American Psychological Association, the nation's largest professional organization for psychology—on its official policy.

170.    Defendant Turner is required to enforce the CDOC's policy to provide specialized sex offense specific treatment to identified offenders to reduce recidivism and enhance public safety by providing continuum of identification treatment and monitoring services through incarceration

171.    Defendant Turner is required to abide by the CDOC Code of Conduct, and Administrative Regulations 1450-01 and 1450-05, which govern commutations between staff and inmates.

172.    Defendant Turner is required to abide by CDOC Administrative Regulations, and established law which requires that he not unnecessarily place inmates in danger within the prison general population.

173.    Defendant Turner knew, and reviewed Plaintiff's December 10, 2024 request for SOTMP treatment.

174.    Defendants Turner knew, and participated in the DENIAL of Plaintiff's December 10, 2024 request for SOTMP treatment.

175.    Defendant Turner is aware that the failure to enroll Plaintiff in mandated SOTMP therapeutic treatment violates Plaintiff's liberty interest in Treatment.

176.    Defendant Turner is aware that failure to treat Plaintiff's severe medical ills constitutes Cruel & Unusual Punishment.

177.    Defendant Turner is aware that failure to treat Plaintiff's severe medical ills may place Plaintiff in unnecessary danger.

**Harm Suffered Through Lack Of Treatment.**

178.    Here, Plaintiff finds himself in the somewhat unique position (unique to offenders sentenced to indeterminate life sentences) that he cannot ascertain when he will be able to regain his liberty interest.[13]   Moreover, every non-sex offender convicted of an F2, F3, F4, F5, and F6 felony is provided with a time computation, and may tell his or her family of the approximately date when he or she will regain his or her liberty.

179.    Even offenders convicted of F1 felonies, and are sentenced to life without parole, know their end date . . . end of natural life.

180.    Here, Plaintiff's end date is entirely dependent upon factors outside of his control which include, but are not limited to: (a) a civil conspiracy by Defendants to artificially inflate the prison population by denying SOTMP treatment to Plaintiff and others in order to request increased state and federal funding, which may be used for programs or reasons other than SOTMP Therapeutic Treatment[14]; (b)  discrimination against Plaintiff due to his "Religiosity" and/or Nationality; (c) Personal animus against Plaintiff for reasons presently unknown, but known to Defendants; and (d) retaliation against Plaintiff for his repeated and continuing efforts to challenge the Defendants' arbitrary, capricious and omnipotent management of the SOTMP.

181.    Living in a state of purgatory, awaiting treatment for a severe mental health crisis has rendered Plaintiff spiritually, emotionally and physically damaged.

182.    Prior to incarceration, Plaintiff may have suffered, and may continue to suffer presently unidentified mental health illnesses defined in the *American Psychiatric Association (2013) Diagnostic and Statistical Manual of Mental Health Disorders* (5th ed.)  see https://doi.org/10.1176/appi.books.9780890425596.

183.    These presently unidentified mental health illnesses, as defined in the *American Psychiatric Association (2013) Diagnostic and Statistical Manual of Mental Health Disorders* (5th ed.)  may include one or more specified or unspecified paraphilic disorders, or one or more "Primary Disruptive, Impulse-Control and Conduct Disorders." *Id*.

---

[13] To be clear, the gravamen of Plaintiff's Compliant is a *lack of treatment*, and not present ineligibility for parole. As such, Plaintiff hopes that the Defendants will NOT attempt to transmogrify this case into a "liberty interest in parole case," which it is NOT.

[14] See Indictment filed April 17, 2025 against CDOC Staff and the Director of Colorado Adult Parole for embezzlement/misappropriation of funds.  *See also* allegations set forth in <u>Gambrel v. Stancil</u> 1:24-cv-01853 ECF 1.

184.   These presently unidentified mental health illnesses/disorders remain untreated by the Defendants, notwithstanding the General Assembly's Mandate for treatment, Defendants knowledge that Plaintiff needs treatment, and Plaintiff's repeated requests for treatment. As such, Plaintiff continues to suffer the harms of being left untreated in a mental health crisis.

185.   As a result of Defendants' repeated refusals to treat Plaintiff's mental health illness(es) , Plaintiff has suffered and continues to suffer *emotionally and mentally* from illness(es) and disorders.

186.   Plaintiff now suffers: (a) Anxiety; (b) Depression; (c) General fear; (d) Hopelessness; (e) Low self-esteem; (f) Feelings of helplessness; (g) Insomnia; (h) Confusion; (i) Dissociative disorder; (j) Flashbacks; (k) Loss of feelings of well-being; (l) Chronic unhappiness; (m) Fear of personal safety; (n) Loss of internal harmony; (o) Lack of concentration; (P) Irritability; (q) Loss of peace; (r) Hyper-vigilance; (s) Loss of enjoyment of life; (u) Spiritual disillusionment; (v) Shame; (x) Paranoia (y) Avoidance/procrastination; and (z) other symptoms consistent with PTSD.

187.   Plaintiff has suffered, and continues to suffer *physically* as a result of denials of SOTMP treatment, including, but not limited to: (a) Insomnia; (b) Severe headaches and migraine headaches; (c) Lower back pain; (d) Inflammation; (e) Severe neck pain resulting from insomnia; (f) Severe lethargy; and (g) Lowered immune response which has rendered Plaintiff chronically ill, and most recently ill with COVID, and Norovirus.

188.   Plaintiff has suffered, and continues to suffer *religious conflict* as a result of the SOTMP's characterization of religiosity as a "criminal thinking error" insofar as it has the effect of undermining Plaintiff's religious beliefs, and forcing him to re-evaluate the teachings of Christ.

189.   But for Defendants' actions and failures to act, and the resultant *religious conflict*, Plaintiff would not have curtailed his religious practices including but not limited to: (a) reducing his study of the Holy Bible scriptures; (b) reducing his attendance at religious services; (c) avoiding carrying his Holy Bible out of his cell; (d) hiding his Holy Bibles in his legal box so that it will not be visible to CTCF staff; (e) ceasing requests for religious greeting cards and materials from the CTCF chapel; (f) avoiding speaking of religious topics to his parents on the CTCF recorded prisoner phone lines; and (g) withholding tithes to the Church.

28

190.    The curtailment of Plaintiff's religious practices is specifically linked to fear that the SOTMP Therapeutic Treatment Team may observe his religious practices, and tag Plaintiff with the "Criminal Thinking Error" of "Religiosity," and/or asking Plaintiff about Plaintiff's religious practices while strapped to a polygraph test - where admitting to the belief that Christ died for his sins[15] could lead to removal from SOTMP Therapeutic Treatment.

191.    Plaintiff has suffered and continues to suffer the loss of his **_human potential_** due to Defendants' deliberate indifference callous disregard, malevolent acts and failures to act, and conscious retaliation arising from Plaintiff's reasonable efforts to avail himself of his 1st and 14th amendment rights (substantive and procedural).

192.    Plaintiff has suffered and continues to suffer unconstitutional conditions of confinement in the form of religious persecution and the chilling of his free exercise of religion.

193.    Plaintiff has suffered and continues to suffer unconstitutional conditions of confinement in the form of cruel and unusual punishment in the form of failing to treat a known mental health illness or illnesses which require sex offender treatment as mandated by the General Assembly.

194.    Plaintiff has suffered and continues to suffer unconstitutional conditions of confinement due to Defendants invidious civil conspiracy to deprive him of his rights to equal protection due to his "Religiosity," Nationality, and due to their own self-interest to artificially inflate the offender population in order to justify increased state expenditures.

195.    As evinced by further factual enhancement set forth above, and throughout this Complaint, Plaintiff has suffered, and continues to suffer unconstitutional conditions of confinement as a consequence of the totality of Defendants' action and failure to act.

_**Prayer for relief**_

For these reasons Plaintiff respectfully request that Defendants be cited to appear and answer and that the court enter judgment against Defendants, including, but not limited to:

---

[15] John 3:16 "For God so loved the world that he gave his one and only Son, that whoever believe in him shall not perish but shall have eternal life." *See also* Christ died for our sins according to the Scriptures." 1 Corinthians 15:3; and "For the wages of sin is death, but the gift of God is eternal life in Christ Jesus our Lord." Romans 6:2.   Holy Bible New International Version Copy Right 2011 by Zondervan.

### *Declaratory Judgment*

Plaintiff reaffirms and incorporates by reference the prior paragraphs, as well as the introduction and background section of this complaint

Plaintiff requests that the Court enter an order determining that

    a.  Plaintiff has a protected liberty interest in receiving sex offender treatment;

    b.  Defendants have unlawfully deprived plaintiffs of his substantive and procedural rights to due process; and

    c.  Plaintiff has suffered significant harm from Defendants' conduct.

### *Injunctive Relief*

Plaintiff reaffirms and incorporates by reference the prior paragraphs as well as the introduction and background sections of this complaint.

Plaintiff requests that the Court enter an order for permanent injunctive relief requiring Defendants and their officers to provide treatment as statuary required, permit virtual treatment and/ or relocation to a metro area to receive treatment, and permit Plaintiff to receive treatment from privately retained therapists,

Plaintiff also request that the Court award:

    a)  Actual and special damages against Defendants in an amount to be proven at trial;

    b)  Prejudgment and post-judgment interest; and

    c)  Such other relief, both general and special to which Plaintiff may have a right to receive.

## F.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes **_X_** No (*check one*).

## G.    ADMINISTRATIVE REMEDIES

Is there a formal grievance procedure at the institution in which you are confined?
    **_X_** Yes ___ No (*check one*)

Did you exhaust administrative remedies?
    **_X_** Yes ___ No (*check one*)

## FIRST CLAIM for relief under 42 U.S.C. § 1983
*Against all Defendants*
*Fourteenth Amendment Violation—Procedural Due Process*

196.   Plaintiff reaffirms and incorporates by reference the prior paragraphs as well as the introduction and background section of this Complaint.

197.   SOLSA creates a protected liberty interest in a "sex offender" receiving therapeutic mental health treatment because SOLSA mandates mental health treatment coextensive with incarceration.

198.   Defendants are well aware of the mandate of SOLSA, and how it requires their individual and collective actions to further the interests of the citizens of Colorado, including those citizens incarcerated for sex offenses.

199.    SOLSA recognizes that offenders convicted of certain sex offenses suffer from specified or unspecified paraphilic disorders, or primary disruptive, impulse-control and conduct disorders which require specialized treatment in the interest of the offender's mental health, and in the interest of the safety of the community at large.

200.   Defendants violated Plaintiff's protected liberty interests by depriving him of the opportunity to participate in mandatory SOTMP treatment without notice of the deprivation, without an opportunity to formally contest the deprivation of treatment, and without meaningful periodic review of their deprivation of Plaintiff's treatment.

201. Plaintiff has experienced significant harms as a direct and proximate result of the deprivation of treatment described herein, because his sentences has effectively been converted into a life sentence without an opportunity for necessary treatment of his potential specified or unspecified paraphilic disorders, or primary disruptive, impulse-control and conduct disorders.

202.   Plaintiff will continue to experience significant harms from Defendants' conduct absent a grant of the declaratory and injunctive relief requested herein.

## SECOND CLAIM for relief under 42 U.S.C. § 1983
### *Against all Defendants*
### *Fourteenth Amendment Violation—Substantive Due process*

203. Plaintiff reaffirms and incorporates by reference the prior paragraphs as well as the introduction and background section of this Complaint.

204. SOLSA creates a protected liberty interest in a "sex offender" receiving therapeutic mental health treatment because SOLSA mandates mental health treatment coextensive with incarceration.

205. SOLSA recognizes that offenders convicted of certain sex offenses suffer from specified or unspecified paraphilic disorders, or primary disruptive, impulse-control and conduct disorders which require specialized treatment in the interest of the offender's mental health, and in the interest of the safety of the community at large.

206. Under Fourteenth Amendment to the United States Constitution Plaintiff may not be deprived of his protected liberty interest without due process.

207. Defendants have violated Plaintiff's protected liberty interests under the Fourteenth Amendment by arbitrarily depriving him of access to sex offender therapeutic mental health treatment in contravention of SOLSA and without any legitimate penological justification.

208. Defendants violated Plaintiff's protected liberty interests under the Fourteenth Amendment by knowingly and willfully implementing and enforcing a policy and actual practice of depriving Plaintiff of statutorily mandated treatment despite actual knowledge that such deprivation has no mental health therapeutic basis, nor a penalogical interest, —causing Plaintiff to unnecessarily languish in prison without mental health treatment.

209. As direct and proximate result of Defendants' deliberate indifference toward providing Plaintiff with the opportunity to participate in therapeutic mental health treatment, Plaintiff has suffered significant harms.

210. Plaintiff will continue to experience significant harms from Defendants' conduct absent a grant of the declaratory and injunctive relief requested herein.

## FOURTH CLAIM For Relief under 42 USC 2000cc
*Against all Defendants*
*Religious Land Use and Institutionalized Person Act*

227.   Plaintiff reaffirms and incorporates by reference the prior paragraphs as well as the introduction and background section of this Complaint.

228.   The congress of the United States enacted the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) in order to prohibit discrimination by prison official against a prisoner's exercise and their religious beliefs.

229.   The Religious Land Use and Institutionalized Persons Act protects an incarcerated person from having a substantial burden placed upon his or her exercise of religion.

230.   The Defendants have placed a chilling effect on Plaintiff's free exercise of religion, and have given unequal access and preference to agnostic participants of SOTMP by virtue of the favored participants' lack of "religiosity"

231.   The Defendants' implementation of anti- religious and anti-Christian policies contributed to Plaintiff not being allowed sex offender therapeutic treatment.

232.   As a result of the Defendants' actions or failures to act, the Defendants failed to provide a broad protection for Plaintiff's exercise of his religion.

233. The actions of the Defendants significantly inhibated or constrained, and continue to inhabit and constrain Plaintiff's conduct and expression of his Christian faith.

## FIFTH CLAIM for relief under 42 U.S.C. § 1983
### *Against all Defendants*
*(8th Amendment – Cruel and Unusual Punishment)*

234.    Plaintiff reaffirms and incorporates by reference the prior paragraphs as well as the introduction and background section of this Complaint.

235.    It is manifest that the Colorado General Assembly enacted SOLSA to treat a Sex Offender's serious mental and emotional illnesses, "criminal thinking errors." and "distorted core beliefs."

236.    In creating a mental health treatment program for Sex Offenders' mental, psychological, and emotional deficiencies and illnesses, the General Assembly established a Board which consist of psychologist, licensed therapists, and other professionals who are expert in the mental health treatment, and management of Sex Offenders.

237.    Plaintiff's conviction for internet luring of a child with intent to exploit renders him a "Sex Offender" under SOLSA, and therefore places Plaintiff within a category of inmates who require intensive psychological and emotional "SOTMP treatment."

237.    The SOTMP Therapeutic mental health treatment program does NOT include physical or medical therapy but rather is focused solely on mental health treatment and therapy, which is far beyond the rudimentary rehabilitation programs available to other inmates within the CDOC (such as "Restorative Justice," or "Seven Habits of Highly Effective People").

238.    Defendants have unequivocally concluded that, according to SOLSA, Plaintiff needs intensive psychological and emotional "SOTMP treatment" to address manifest mental health issues including but not limited to potential specified or unspecified paraphilic disorders, or primary disruptive, impulse-control and conduct disorders as defined in the *American Psychiatric Association (2013) Diagnostic and Statistical Manual of Mental Health Disorders* (5th ed.)

239    Notwithstanding the manifest need for therapeutic mental health treatment, the Defendants are callously disregarding that need, and are deliberately indifferent to providing such mental health treatment.

240.    Inmates who have been diagnosed or labeled with mental illness and disorders, including but not limited to "Specific Paraphilic Disorders," "Disruptive Disorders," "Impulse-control Disorders," and "Conduct Disorders are as deserving of treatment as inmates who have serious medical needs.

241.    Defendants, whose CDOC mission is to provide "corrections" to "Offenders", are aware that the need for mental health care is serious in the Sex Offender context because psychiatrists, psychologist, and other professionals on the SOMB have mandated such treatments as a "corrective" measure.

242.    Defendants are aware that the need for mental health care for Sex Offender is serious because it is so obvious that even a lay person would easily recognize the necessity for Sex Offender mental health care and treatment.

243.    Defendants are aware that failure to provide necessary psychological or psychiatric treatment to Sex Offenders and other inmates with serious mental or emotional disturbances and illnesses will result in the infliction of pain and suffering just as real as would result from failure to treat serious physical ailments. Defendants are aware that there exists no reason why psychological or psychiatric care should not be held to the same standard as medical care, and that a convicted Sex Offender is entitled to psychological or psychiatric care as mandated by SOLSA.

244.    Defendants are aware that there is no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart.

245.    Defendants have inflicted upon Plaintiff the deprivation of treatment with culpable state of mind, that is, with a willful and wanton disregard towards Plaintiff's mental health.

246.    This deprivation of mental health care has caused Plaintiff serious physical, spiritual, and emotional harms.

247.    In addition to the serious harms described in above, the Defendants' absolute denial of SOTMP- Mental Health treatment for an indefinite period of time has placed Plaintiff in the singular category of inmates who have no foreseeable outdate, and have no means to ascertain such an outdate.

248.    The defendants' actions have therefore taken all hope away from Plaintiff that he may ever get sex offender treatment.

37

249.    As Andy Dufrei said in the Shawshank Redemption: "hope is a good thing. Perhaps the best of things, and a good thing never dies." Here however, the Defendants have attempted to kill all hope in a way that serves nothing more than cruel and unusual punishment under the talisman of legitimacy afforded to the Defendants by their misguided interpretation and implementation of SOLSA and the willful and wanton disregard for the SOMB Guidelines.

### SIXTH CLAIM for relief under *42 USC section 1985 (3)*
*Against all Defendants*
*(Civil Conspiracy)*

250.    Plaintiff reaffirms and incorporates by reference the prior paragraphs as well as the introduction and background section of this Complaint.

251.    The essential elements of 1985 (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.

252.    Defendants conspired to deprive Plaintiff of equal protection or equal privileges and immunities under the law, and acted in furtherance of this objective.

253.    Defendants have engaged in a conspiracy to retaliate against Plaintiff due to the exercise of his protected right under the U.S Constitution, i.e., freedom of religion (Christian Faith)

254.    As a result, Defendants injured Plaintiff by depriving him of SOTMP treatment.

255.    The intent behind the conspiracy was and remains grounded in invidious and discriminatory personal animus, the exercise of Plaintiff's' First Amendment rights, and Plaintiff's Christian faith and beliefs.

256.    As a result, Plaintiff has suffered, and without this Court's intervention, will continue to suffer irreparable injury.

## H.    PLAINTIFF'S SIGNATURE

I Peyman Babaei, declare under penalty and perjury that I am the plaintiff in this action, that I have prepared and read this Complaint, and that the information in this complain is true and correct, except to matters alleged on information and belief, and, as to those I believe them to be true, and supportable after discovery. See 28 U.S.C. **§1746; 18 U.S.C. § 1621.**

I further declare under the penalty of perjury that I have read this complaint. And Verify that the facts, circumstances, and allegations in this complain are true and correct, except to matter alleged on information and belief, and, as to those, I believe them to be true and supportable after discovery.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complain : 1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) is supported by existing law or by a non-frivolous argument for extending or modifying existing law; 3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) the Complaint otherwise complies with requirements of Rule 11.

_____
(Plaintiff's signature)

_____5.13.25_____
(Date)

(Revised November 2022)

neopost®
05/14/2025
US POSTAGE
$03.71⁰
ZIP 81212
041L11241745

Colorado Department of Corrections
Name  Raymon Robnel
Register Number 194690
Unit  Y 9R16
Box Number 1010
City, State, Zip Canon City, Co, 81215

U.S. Dist. Court (office of the Clerk)
Alfred A Arraj Court House
901 - 19th St. Room A 105
Denver, Co  80294- 3589

LEGAL



LEGAL